AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
6/22/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: CD  DEPUTY

United States of America

v.

EDGARDO FERALIN DORMIDO JR.,

Defendant

FILED
CLERK, U.S. DISTRICT COURT
June 22, 2022
CENTRAL DISTRICT OF CALIFORNIA
BY: MR  DEPUTY

Case No.  2:22-mj-02445-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Since on or about July 13, 2015, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1073 | Unlawful Flight to Avoid Prosecution |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Daniel Eggensammer
Complainant's signature

Daniel Eggensammer, FBI Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: June 22, 2022

Judge's signature

City and state: Los Angeles, California

Hon. Pedro V. Castillo, U.S. Magistrate Judge
Printed name and title

AUSA: Dominique Caamano (x0492)

**AFFIDAVIT**

I, Daniel Eggensammer, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant for EDGARDO FERALIN DORMIDO JR. ("DORMIDO") for Unlawful Flight to Avoid Prosecution, in violation of Title 18, United States Code, Section 1073.

2. The information contained herein is based on my participation in this investigation and my training and experience, as well as my conversations with other law enforcement officers and my review of various law enforcement documents. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF SPECIAL AGENT DANIEL EGGENSAMMER

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since August 2021. I am currently assigned to the Violent Crimes squad at the FBI Long Beach Resident Agency. My training has included, but is not limited to, learning a wide array of investigative tools, operational skills, firearms, interviewing techniques, case development and working in direct relation to FBI Special

1

Agents who oversee cases such as interstate threatening communication and aggravated sexual assaults on children.  I have seen first-hand and have spoken with them about the investigative tools and resources that are best suited for these types of investigations.  My responsibilities with the FBI include, but is not limited to, the investigation of extortion, aggravated threats, bank robberies, kidnapping, fugitives, drug cases, and violent gangs within the Central District of California.  My responsibilities also include the execution of federal arrest and search warrants.  From January 2020 to July 2021, I was employed as a Special Agent with the Drug Enforcement Administration ("DEA") in San Juan, Puerto Rico.  While with the DEA, I was responsible for investigating drug trafficking organizations along America's southeast border.  From July 2018 to January 2020, I was employed as an Operation Support Technician within the FBI Chicago Field Office.  While in this role, I assisted in critical incidents and crisis management situations.

4.   Based upon my experiences and training with the FBI, as well as conversations that I have had with other agents and law enforcement officers who specialize in fugitive investigations, I am familiar with the methods utilized by fugitives to avoid detection and capture by law enforcement.  I have also spoken with agents, as well as other law enforcement officers, about their experiences and the results of their investigations and interviews.  Throughout my conversations with these agents and other law enforcement officers, I am now

knowledgeable in the methods and modes of fugitives to include the techniques, tactics, and procedures fugitives utilize to avoid arrest or detection.

### III. SUMMARY OF PROBABLE CAUSE

5. From 2012 to 2015, DORMIDO worked as a caregiver for Y.E.'s family in their Manhattan Beach home (the "Manhattan Beach Residence"). On July 10, 2015, after being notified that DORMIDO inappropriately touched Y.E.'s nine-year old daughters, L.C.E ("Victim One") and L.E. ("Victim Two"), Y.E. decided to fire DORMIDO. DORMIDO left Y.E.'s house immediately after being fired, and began hiding from law enforcement. DORMIDO first hid at a relative's house, and then, on July 13, 2015, he flew from Los Angeles International Airport ("LAX") to Taipei, Taiwan, and then to Manila, Philippines, using a Philippine passport.

6. On October 9, 2015, DORMIDO was charged in the Superior Court of California for the County of Los Angeles on five different felony counts. The counts are as follows:

    a. Count 1: Oral Copulation or Sexual Penetration with Child 10 Years Old or Younger, in violation of California Penal Code Section 288.7(b);

    b. Count 2: Oral Copulation or Sexual Penetration with Child 10 Years Old or Younger, in violation of California Penal Code Section 288.7(b);

    c. Count 3: Forcible Lewd Act Upon Child, in violation of California Penal Code Section 288(b)(1);

    d. Count 4: Lewd Act Upon a Child, in violation of California Penal Code Section 288(a); and

  e. Count 5: Lewd Act Upon a Child, in violation of California Penal Code Section 288(a).

7. In 2022, I conducted open source inquires and FBI database checks which revealed DORMIDO is currently residing in the Philippines and is working as a janitor at Bago City College in Bago City (Negros Occidental, PH).

### IV. STATEMENT OF PROBABLE CAUSE

8. Based on my review of law enforcement reports, conversations with other law enforcement officers, and my own involvement in this investigation, I know the following:

9. Beginning on or about March 2022, and continuing to the present, I have conversed with and received investigation information from MBPD Detective Sergeant Steve Kitsios relating to this investigation that was initiated on July 11, 2015. Additionally, I have received reports from MBPD Detective Michael Rosenberger. I learned the following from MBPD detectives:

  **A. 2014-July 2015: DORMIDO Sexually Assaulted Victim One and Victim Two in Manhattan Beach, California**

10. Both Victim One and Victim Two resided at the Manhattan Beach Residence at the time of the incident.

11. Victim One was born in 2006. According to information provided by Victim One to MBPD, in or around March or April of 2014, DORMIDO and Victim One were at the Manhattan Beach Residence. While in the first-floor bathroom, Victim One thought she was alone. DORMIDO walked into the bathroom with Victim One. Both Victim One and DORMIDO were fully clothed at

the time of the incident.  While behind Victim One, DORMIDO simultaneously put one bare hand on the top of Victim One's pants, one bare hand on top of Victim One's breasts, and rubbed his hands back and forth on the top of her clothed vaginal and breast area for approximately five minutes.  Victim One did not scream because she was too scared to say anything.  DORMIDO released his grasp of Victim One and left the room.  At that time, Victim One did not tell anyone about the incident.

    12.   According to information provided by Victim One to MBPD, in the summer of 2014, DORMIDO and Victim One were at the Manhattan Beach Residence.  While in the first-floor hallway, DORMIDO was alone with Victim One.  Victim One and DORMIDO were fully clothed at the time of the incident.  DORMIDO grabbed Victim One by her arm.  Victim One asked DORMIDO what he was doing, but DORMIDO did not reply.  While holding onto Victim One's arm from behind her, DORMIDO put his bare hand under Victim One's pants and rubbed his hand back and forth on the top of her bare vagina for approximately one minute.  DORMIDO pulled Victim One's pants down to her ankles.  Victim One looked behind her and saw that DORMIDO's pants were down to his ankles and she could see his penis.  DORMIDO then stated, "it's ok. There's nothing wrong with it."  DORMIDO turned Victim One to face him. While holding Victim One with one hand, DORMIDO grabbed his penis with his other hand and touched his bare penis on top of Victim One's bare vagina for approximately one second.  Victim One squirmed away.  Victim One thought that DORMIDO was attempting to put his penis inside her vagina, although it did

not penetrate her vagina because Victim One squirmed away. Victim One did not scream because she was scared. DORMIDO released Victim One and left the room. At the time, Victim One did not tell anyone about the incident.

    13. Victim Two was born in 2005. According to information provided by Victim Two to MBPD, in December of 2014, DORMIDO and Victim Two were at the Manhattan Beach Residence. Victim Two and DORMIDO were alone in the first-floor hallway. Victim Two and DORMIDO were fully clothed at the time of the incident. While behind Victim Two, DORMIDO simultaneously put one bare hand on the top of Victim Two's pants, one bare hand on top of Victim Two's vaginal area and rubbed his hand back and forth on the top of her clothed vaginal region for approximately one minute. Victim Two did not scream because she was scared. DORMIDO released Victim Two and left the room. At the time, Victim Two did not tell anyone about the incident. Later, when speaking with detectives, Victim Two stated she knew that what DORMIDO was doing to her was wrong.

    14. According to information provided by Victim One to MBPD, on July 10, 2015, at approximately 9:00 a.m., DORMIDO and Victim One were at the Manhattan Beach Residence. While in the second-floor bathroom, Victim One was alone preparing to take a shower. Victim One removed her towel while preparing to get into the shower and was standing wearing only the bra covering her breasts and her lower half of her body was naked. DORMIDO walked into the bathroom with Victim One. DORMIDO was fully clothed at the time of the incident. DORMIDO was staring at

Victim One while standing approximately six feet away from her for approximately thirty seconds. DORMIDO was not masturbating or touching himself in any way. DORMIDO did not advance on Victim One or make any attempt to touch her. Victim One screamed "get out" and kicked DORMIDO in the leg. DORMIDO hastily left the room. At the time, Victim One did not tell anyone about the incident.

15. According to information provided by Victim One to MBPD, on the afternoon of July 10, 2015, DORMIDO and Victim One were in the backyard at the Manhattan Beach Residence. While in the treehouse in the backyard, Victim One and DORMIDO were sweeping the floor of the treehouse. Victim One and DORMIDO were fully clothed at the time of the incident. DORMIDO grabbed Victim One by the arm. While behind Victim One, DORMIDO put one bare hand under Victim One's shirt and rubbed his hand back and forth on Victim One's breast area for approximately six seconds. Victim One said "stop;" DORMIDO stopped and released Victim One from his grasp. Victim One said "if you do that again I'm going to scream then tell my mom." DORMIDO left the treehouse. At the time, Victim One did not tell anyone about the incident.

16. According to information provided by Victim One to MBPD, on July 10, 2015, at approximately 1600 hours, Victim One and DORMIDO were at the Manhattan Beach Residence. Victim One was alone in the upstairs master bedroom playing on an iPad. DORMIDO walked into the bedroom. Victim One and DORMIDO were fully clothed at the time of the incident. DORMIDO grabbed Victim One by the arm and forcibly led Victim One into the

adjoining bathroom.  Victim One told DORMIDO to "stop" but DORMIDO did not comply.  While behind Victim One, DORMIDO put one bare hand on top of Victim One's clothed vaginal area and rubbed his hand back and forth for approximately five seconds.  Victim One said "stop;" DORMIDO stopped and released Victim One from his grasp.  Victim One said "I warned you now I'm going to tell my mom."  DORMIDO told Victim One "if you tell your mom, I'll hurt you."  DORMIDO left the master bathroom.

17. According to information provided by Y.E. to MBPD, later in the evening on July 10, 2015, Victim One told Y.E. about the prior incidents of DORMIDO inappropriately touching her.  Victim One told Y.E. that DORMIDO had touched Victim One inappropriately on her vagina and on her breasts and it had been ongoing for the past year and a half.  Victim One stated that what DORMIDO was doing to her was wrong.  Victim One was able to give detailed accounts of the above incidents, although Victim One stated that these types of incidents have happened exactly thirty-seven times to her recollection.  Victim One was unable to remember or give detailed accounts of any other incidents.

18. On July 10, 2015, Victim Two told Y.E. that DORMIDO had also touched Victim Two inappropriately on her vagina.

19. After speaking with Victim One and Victim Two, Y.E. decided to fire DORMIDO as a caregiver.  On the morning of July 11, 2015, DORMIDO showed up at the Manhattan Beach Residence like he normally did.  Y.E. told DORMIDO to get away from the children because Y.E. knows what DORMIDO has been doing to the children.  DORMIDO left the location immediately.

20. On July 11, 2015, at 11:40 a.m., DORMIDO sent a text message to Y.E.'s cell phone from the cell phone number +18185346466. This is the same number that DORMIDO primarily uses to communicate with Y.E. DORMIDO sent the following in his text message to Y.E.: "[Y.E.] what ever you want to do to me… I accept it.. this is the biggest mistake I done to you,pls I beg you dont end my life or kill me.. pls give me a chance to change my path and change my life,if u want to send me in prison il accept it… im sorry [Y.E.]…il give u the right what ever you do to my life..thank you for evrything you've done to me and my family… i am a sinner to be punish…just tel me what ever you want me to do… thank you [Y.E.]…" Y.E. did not respond to the text message and has not talked to DORMIDO since.

**B.    July 2015: DORMIDO Flees the U.S. for the Philippines**

21. Based on my review of the FBI's file on this matter, I learned:

   a.    Before Y.E. confronted DORMIDO on July 11, 2015, DORMIDO resided with his sister, brother-in-law, and roommate at a residence on the 2800 block of Moss Avenue in Los Angeles, California 90065.

   b.    On July 12, 2015, DORMIDO was last seen by the roommate while sitting on the front porch of the residence.

   c.    DORMIDO stated to his relatives that he was waiting for the police to arrive. DORMIDO's relatives recalled that he seemed very distraught. DORMIDO's relatives also recalled that DORMIDO admitted to them he tried to commit suicide on July 11, 2015.

9

22. Travel records show that DORMIDO departed from LAX to Taipei, Taiwan via China Airline's flight number 7 on July 13, 2015. On July 14, 2015, DORMIDO traveled from Taipei, Taiwan to Manila, Philippines. DORMIDO utilized Philippine passport: EC0748474.

C. **DORMIDO Charged With Multiple Felonies**

23. On October 9, 2015, DORMIDO was charged in the Superior Court of California for the County of Los Angeles on five different felony counts as follows:

    a. Count 1: Oral Copulation or Sexual Penetration with Child 10 Years Old or Younger, in violation of California Penal Code Section 288.7(b);

    b. Count 2: Oral Copulation or Sexual Penetration with Child 10 Years Old or Younger, in violation of California Penal Code Section 288.7(b);

    c. Count 3: Forcible Lewd Act Upon Child, in violation of California Penal Code Section 288(b)(1);

    d. Count 4: Lewd Act Upon a Child, in violation of California Penal Code Section 288(a); and

    e. Count 5: Lewd Act Upon a Child, in violation of California Penal Code Section 288(a).

24. The Superior Court of California issued an arrest warrant for DORMIDO on those charges.

D. **DORMIDO Continues to Reside in the Philippines**

25. Beginning on March 10, 2022, other law enforcement officers and I conducted open source and FBI database searches on DORMIDO. Those inquires revealed DORMIDO is currently

employed at Bago City College in Bago City (Negros Occidental, PH) as a Janitor.

26. A search into his social media revealed a Facebook profile username of Edgar.dormido.3. DORMIDO has posted information mentioning that his current place of employment is Bago City College in Bago City (Negros Occidental, PH) working as a Janitor after moving there in 2019.

27. Database checks also confirmed DORMIDO residing in the Philippines as recently as May 20, 2022.

CONCLUSION

28. For all the reasons described above, there is probable cause to believe that DORMIDO has violated Title 18, United States Code, Section 1073: Unlawful Flight to Avoid Prosecution.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 22nd day of June, 2022.

_____
HONORABLE PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE